Neil Grossman (NG 9113)
Peretz Bronstein (*to be admitted pro hac vice*)
**Bronstein, Gewirtz & Grossman, LLC**
144 North Beverwyck Road Lake, Suite 187
Lake Hiawatha, New Jersey 07034
Tel:  (973) 335-6409
Fax:  (973) 335-3717
*Attorneys for Plaintiffs*
*Mark Gottlieb and Frank J. Brush*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK GOTTLIEB and FRANK J. BRUSH, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |
| v. | |
| EQUIFAX, INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs MARK GOTTLIEB and FRANK J. BRUSH (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as and for their Complaint against the defendant, EQUIFAX, INC. ("Equifax") allege and state as follows based upon their own personal knowledge with respect to themselves and their own acts, and, with respect to other matters, based upon information and belief derived from, among other things, investigation of

counsel and a review of public documents.

## SUMMARY OF THE ACTION

1.      This is a class action lawsuit alleging that defendant Equifax failed (1) to secure and safeguard consumers' personally identifiable information ("PII"), including the PII of the above named plaintiffs, (2) to provide timely, accurate, and adequate notice to the above named plaintiffs and other class members that their PII had been stolen, and (3) to adequately identify the information and type of information that were stolen.   Upon information and belief, Equifax had acquired this PII from various sources for use in its business as a consumer credit reporting agency.

2.      Equifax has already acknowledged the occurrence of a cybersecurity incident (herein, the "Data Breach") and has already acknowledged that the Data Breach may impact approximately 143 million U.S. consumers.  In this connection, Equifax has already admitted that unauthorized persons unknown exploited a U.S. website application vulnerability to gain access to certain files. Equifax contends that this unauthorized access occurred from mid-May through July 2017. Equifax has further stated that the improperly accessed PII consists primarily of the names of the affected individuals together with their social security numbers, birth dates, addresses and, in some instances, driver's license numbers. In addition, Equifax has admitted that the stolen PII includes the credit card account numbers of approximately 209,000 U.S. consumers and certain dispute documents associated with approximately 182,000 U.S. consumers.

3.      Equifax has stated that it discovered the Data Breach on or about July 29 2017, and that it failed at that time to inform the public of the Data Breach's occurrence.  Equifax waited to notify the public until a date *after* certain Equifax executives had sold at least $1.8

million worth of Equifax shares, no doubt in the expectation that Equifax's share price would drop dramatically following disclosure of the Data Breach.    It has been reported that Equifax's Chief Financial Officer, Mr. John Gamble, sold Equifax shares worth $946,374 after discovery of the Data Breach but before public disclosure of the Data Breach.  Likewise, during the period between discovery of and disclosure of the Data Breach, Mr. Joseph Loughran, President of Equifax's affiliate US Information Solutions, exercised options he held to dispose of Equifax stock worth $584,099.  During the same period, Mr. Rodolfo Ploder, President of Equifax's affiliate Workforce Solutions, sold $250,458 of stock on August 2, 2017.

4.    Equifax's acts and omissions described herein improperly compromised the PII belonging to Plaintiffs and the other members of the class they seek to represent (the "Class").

5.    The Data Breach was both preventable and foreseeable, especially as similar breaches of data have already occurred at other companies that handle confidential consumer data, including one of Equifax's major competitors, Experian.  Accordingly, Equifax ought to have been aware that it is a likely target for the perpetrators of data breaches, and ought to have taken appropriate protective measures.

6.    The Data Breach was the inevitable result of Equifax's inadequate approach to data security, its disregard for the welfare of the consumers whose PII it possessed and its failure to take measures adequate to protect such PII.

7.    Equifax disregarded the rights of Plaintiffs and Class members by intentionally, willfully, recklessly, and/or negligently failing to take adequate and reasonable measures to ensure that its data systems were secure, by failing to disclose to consumers the material fact that it did not have adequate computer systems and security practices to safeguard PII, by

failing to take available steps to prevent and stop the Data Breach from ever happening, and by failing to monitor PII and actual and potential activity concerning PII adequately.

8.    As a result of Equifax's acts and omissions, Plaintiffs and the other members of the Class they hope to represent have suffered damages and may in the future suffer further damages that may include:

    a.   exposure of their PII to identity thieves and other criminals;

    b.   unauthorized use of their PII;

    c.   theft of their personal and financial information;

    d.   costs necessary to detecting and preventing  unauthorized use of their financial accounts;

    e.   an inability to access and make use of their own PII freely;

    f.   an inability to access and make use of their own financial accounts freely;

    g.   costs associated with their efforts to maintain and/or to restore free and full use of their own account funds and PII;

    h.   the imposition of  late fees and/or other penalties imposed as a result of the interruption of automatic payment arrangements involving accounts they may hold; ;

    i.   unjustified damage to their FICO credit scores and time and costs incurred to restore their credit standing; and

    j.   loss of privacy and costs associated with protecting privacy.

9.    The injuries to the Plaintiffs and Class members were directly and proximately caused by Equifax's failure to implement or maintain adequate data security measures for PII.

10.    Further, Plaintiffs retain a significant interest in ensuring that their PII, which, while stolen, also remains in the possession of Equifax, is protected from further breaches.

11.    Plaintiffs seek in this action to remedy the harms they and similarly situated consumers have suffered as a result of the Data Breach.  Plaintiffs seek the following remedies, among others: statutory damages under the Fair Credit Reporting Act ("FCRA") and state consumer protection statutes, reimbursement of out-of-pocket losses, other compensatory damages, further and more robust credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Equifax to implement improved data security measures.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative Class members and at least some members of the proposed Class have a different citizenship from Equifax.

13.    This Court has personal jurisdiction over Equifax because Equifax regularly conducts business in the State of New Jersey and has more than sufficient minimum contacts in the State of New Jersey. Equifax intentionally availed itself of this jurisdiction by marketing and selling products and services to New Jersey residents and by accepting and processing payments for those products and services within the State of New Jersey.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

15.    Plaintiff Mark Gottlieb is a resident of the state of New Jersey.

Plaintiff is a victim of the Data Breach as his PII was accessed as a result of the Data Breach.

16.     Plaintiff Frank J. Brush is a resident of the state of Virginia.  He is a victim of the Data Breach as his PII was improperly accessed as a result of the Data Breach.  Plaintiff Brush has spent $30.00 to date to freeze his accounts and to prevent fraudulent conduct.

17.     Defendant Equifax, Inc. is a Delaware corporation with its principal place of business located at 1550 Peachtree Street NE Atlanta, Georgia 30309.

## STATEMENT OF FACTS

18.     Equifax is one of at least three nationwide credit-reporting companies that track and rate the financial history of U.S. consumers. Equifax and similar companies obtain a wide variety of information and data concerning consumers, including information about loans to consumers, loan payments by consumers and credit card accounts held by consumers.  These companies also obtain information regarding child support payments made by consumers, credit limits they enjoy, histories of their rent, utilities payments and the like as well as their employment histories. Equifax uses all such information in part to calculate consumer credit scores, used by lenders and potential lenders to evaluate a consumer's ability to repay loans.

19.     All of this information forms part of a consumer's PII.  Equifax often obtains such PII without the consumer being aware that it has done so, and without the consumer's participation.    Equifax often obtains PII not from the consumer but from credit card companies, banks, retailers, and lenders with whom a consumer deals.

20.     According to Equifax's September 7, 2017 statement, Equifax discovered the Data Breach on July 29th, 2017. Equifax reported that the perpetrators of the Data Breach gained access to PII held by Equifax by exploiting a "website application vulnerability"

existing on one of Equifax's U.S.-based servers.

21.     According to Equifax, various files were accessed by computer hackers.  These files included extensive consumer PII, including consumer names, dates of birth, social security numbers, and addresses.  In addition, the hackers were also able to access and take possession of approximately 209,000 credit card account numbers and additional PII concerning another 182,000 Americans.

22.     Upon information and belief, there is an extensive market for such PII among fraudsters and identity thieves.  Moreover, upon information and belief, hackers often use such PII in part to launch  targeted "phishing" campaigns that yield still more PII

23.     Plaintiffs and the other members of their Class suffered actual injury in the form of damages to and diminution in the value of their PII, a form of intangible property obtained by Equifax and compromised in and as a result of the Data Breach.

24.     Additionally, Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by their PII being placed in the hands of criminals who have already, or will imminently, misuse such information.

25.     Moreover, Plaintiffs have a continuing interest in ensuring that their private information, which remains in the possession of Equifax, is protected and safeguarded from future breaches.

26.     At all relevant times, Equifax was well-aware, or reasonably should have been aware, that the PII collected, maintained and stored in their systems is highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties, such as identity theft and fraud.

7

27.     Moreover, even the general public is aware from extensive media reporting that PII is highly coveted by computer hackers, and that the regular business of many hackers involves the improper procurement of PII.  Data breaches suffered by various corporate entities, including Equifax's competitor Experian, have been well publicized by the press.  Nevertheless, Equifax, whose business is largely similar to that of Experian, failed to take adequate measures to safeguard the PII of Plaintiffs and the other members of their Class.  The media have likewise reported extensively regarding the black market that exists for PII, through which PII is regularly bought and sold.  Legitimate organizations and the criminal underground alike recognize the value of PII contained in a merchant's data systems; otherwise, they would not aggressively seek it out or pay for it.

28.     Accordingly, Equifax knew, or reasonably should have known, at all times relevant hereto, that consumers might be severely damaged if PII were not properly safeguarded.  Likewise, Equifax knew, or reasonably should have known, that hackers would attempt to perpetrate and to profit from a data breach of the kind that Equifax actually suffered.  The damages and potential damages suffered by the Plaintiffs and the members of their Class were likewise obvious and eminently foreseeable.

29.     For the same reasons, it was entirely foreseeable, and Equifax was, or should have been, fully aware, that a data breach of the kind that actually occurred would affect an enormous number of people and would create an enormous number of victims.

30.     Notwithstanding these obvious dangers Equifax's approach to maintaining the privacy and security of the PII of Plaintiffs and Class members was lackadaisical, reckless, or at the very least, negligent.

31.     Equifax's failure to secure the PII of Plaintiffs and their Class permitted and

continues to permit identity thieves to acquire such PII improperly.

32.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."

33.    Personal identifying information is a commodity valuable to identity thieves once such information has been compromised. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."

34.    Identity thieves may also use PII to commit other criminal acts, as by impersonating the PII's actual owners to improperly obtain government issued documents such as driver's licenses and visas.  Or identity thieves may impersonate a PII's owner to obtain tax refunds properly belonging to the owner.

35.    Additionally, the victim of identity theft must typically devote extensive time and money to repair credit ratings and to otherwise undo the effects of identity theft.

36.    The damage caused by identity theft is not always immediately apparent, and may in many situations not appear until well after the theft has occurred.   According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

37.     Accordingly, Plaintiffs and the other members of their Class must from now on constantly monitor their financial and other personal records for signs that identity theft has occurred.  This need to monitor will apply even to those Class members whose PII has not actually been misused to date, because of the possibility that such misuse will occur.

38.     Equifax did not obtain the consent of Plaintiffs and their Class to disclose PII to anyone.  Such non-consensual disclosure violates applicable law and relevant industry standards.

39.     The Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and to protect Plaintiffs' and Class members' PII from unauthorized access, use, and disclosure, as Equifax is required to do by various state and federal regulations, industry practices, and the common law.  Likewise violative of Equifax's obligations under law and industry practice were its failure to establish and to implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PII, to protect against reasonably foreseeable threats.

40.     Equifax had resources sufficient to prevent the Data Breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches affecting numerous corporations and agencies.

41.     Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Equifax would have prevented the Data Breach and, ultimately, the theft of consumers' PII.

42.     As a direct and proximate result of Equifax's wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class members have been placed at imminent and

continuing risk of harm from identity theft and fraud, and they are accordingly required to devote time and effort to mitigation of the actual and potential future impact of the Data Breach.

43.    For example, to mitigate the damage caused by Equifax's misconduct described herein, Plaintiffs and the other members of their Class may have been required to devote time and money to arrange "credit freezes" and "credit alerts" with credit reporting agencies; to alert their banks or other financial institutions to the Data Breach; to close and/or modify financial accounts; to file police reports; and/or to take other similar actions.    These expenditures of time and money constitute compensable damages for which Equifax ought to be held liable.

44.    Equifax's wrongful actions and its inaction directly and proximately caused the theft and dissemination of Plaintiffs' and Class members' PII into the public domain. Plaintiffs and the other members of their Class accordingly suffered, and will continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    theft of their personal and financial information;

b.    unauthorized charges on their debit and credit card accounts;

c.    already existing, imminent and impending injury flowing from potential fraud and identity theft posed by the placement of PII into the hands of criminals who may sell PII on the black market;

d.    the untimely and inadequate notification of the Data Breach;

e.    the improper disclosure of their PII;

f.    loss of privacy;

g.    ascertainable losses in the form of out-of-pocket expenses and the value of time

reasonably expended in mitigation and remediation of the effects of the Data Breach;

h.     ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

i.     ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

j.     loss of use of consumer accounts and account funds, together with costs associated with the inability to make use of such accounts and funds, such costs including late fees, overdraft fees, adverse credit notations, and the like; and,

k.     lost productivity, lost time and their value arising from the need to spend time and effort ameliorating, mitigating and otherwise dealing with the current and future consequences of the Data Breach, including, for instance, finding fraudulent charges, cancelling and reissuing credit cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

45.    Equifax has not offered consumers any meaningful credit monitoring or identity theft protection services, despite the fact that it is well known and acknowledged by the government that damage and fraud from a data breach can take years to occur. As a result, Plaintiffs and Class members are left to their own devices to protect themselves from the financial damage Equifax has allowed to occur. The additional cost of adequate and appropriate coverage or insurance against the losses and exposure that Equifax's actions have created for Plaintiffs and Class members is ascertainable and may be determined by a trier of fact. To date, Equifax has failed to offer to pay for any of the damages sustained by Plaintiffs or Class members.

46.    Even though the PII of Plaintiffs and Class members has already been stolen from Equifax, Equifax continues to hold such PII. Particularly as Equifax has already shown itself to be ineffective in preventing the theft of PII, Plaintiffs and Class members have an undeniable interest in ensuring that such PII as Equifax possesses will be secured through its proper

and prompt destruction, to remove it from the threat of further theft.

## CLASS ALLEGATIONS

47.    Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), Plaintiffs seeks certification of a nationwide class defined as follows:

> All persons residing in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Nationwide Class" or "Class").

48.    Excluded from the Class are Equifax and any of its affiliates, parents or subsidiaries; all employees of Equifax; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

49.     Plaintiffs hereby reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

50.    The proposed Class meets the criteria for certification under Rules 23(a), (b)(2), (b)(3) and (c)(4).

51.    **Numerosity.** Members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the proposed Class includes at least 143 million individuals whose PII was compromised in the Data Breach. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

52.    **Commonality.** Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a.    Whether Equifax had a duty to protect PII;

b.    Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c.    Whether Equifax's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d.    Whether Equifax was negligent in failing to implement reasonable and adequate security procedures and practices;

e.    Whether Equifax's failure to implement adequate data security measures allowed the breach to occur;

f.    Whether Equifax's conduct constituted deceptive trade practice under the law;

g.    Whether Equifax's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiffs and other Class members;

h.    Whether Plaintiffs and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably protect its systems and data network; and,

i.    Whether Plaintiffs and Class members are entitled to relief.

53.    **Typicality.**    Plaintiffs' claims are typical of those of other Class members. Plaintiffs had their PII compromised in the Data Breach.  Plaintiffs' damages and injuries are akin to those of other Class members and Plaintiffs seeks relief consistent with the relief of the Class as a whole.

54.    **Adequacy.** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Equifax to obtain

relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating complex cases, including class actions. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

55.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Equifax, and thus, individual litigation to redress Equifax's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

56.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

57.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would

advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

     a.  Whether Equifax failed to timely notify the public of the Breach;

     b.  Whether Equifax owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

     c.  Whether Equifax's security measures were reasonable in light of data security recommendations and other measures recommended by data security experts;

     d.  Whether Equifax failed to comply with industry standards to a degree amounting to negligence;

     e.  Whether Defendant failed to take commercially reasonable steps to safeguard the PII of Plaintiffs and the Class members; and,

     f.  Whether adherence to data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

58.  Finally, the identities of all Class members are readily ascertainable. Equifax has access to information regarding the Data Breach, the time period of the Data Breach, and identifying which individuals were potentially affected. Using this information, the Class members can be identified and their contact information ascertained for purposes of providing notice to the Class.

## **COUNT I**
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND
### THE NATIONWIDE CLASS)

59.  Plaintiffs restate all other allegations in this complaint as if fully set forth hereat.

60.  Upon accepting and storing the PII of Plaintiffs and Class members in its

computer systems and on its networks, Equifax undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the PII was private and confidential and should be protected as private and confidential.

61.     Equifax owed Plaintiffs and the Class a duty of care that included an obligation to avoid subjecting them to an unreasonable risk of harm through inadequate safeguarding of PII, because it was foreseeable that Plaintiffs and the Class were probable victims of any inadequate security practices.

62.     Equifax owed numerous duties to Plaintiffs and to members of the Nationwide Class, including the following:

    a.     to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

    b.     to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

    c.     to implement processes to quickly detect a data breach and to act timely on warnings about data breaches.

63.     Equifax also breached its duty to Plaintiffs and Class members to adequately protect and safeguard PII by knowingly disregarding standard information security principles despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their inadequate practices, Equifax failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which failures permitted an unknown third party to gather PII of Plaintiffs and Class members, to misuse the PII, and to intentionally disclose it to others without consent.

64.     Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Equifax knew about numerous, well-publicized data breaches, including the breach at Experian, its competitor.

65.     Equifax knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class members' PII.

66.     Equifax breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members.

67.     Because Equifax knew that a breach of its systems would damage millions of individuals, including Plaintiffs and Class members, Equifax had a duty to adequately protect their data systems and the PII they contained.

68.     Equifax had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Equifax with their PII was predicated on the understanding that Equifax would take adequate security precautions. Moreover, only Equifax had the ability to protect its systems and the PII it stored on them from attack.

69.     Equifax's own conduct also created a foreseeable risk of harm to Plaintiffs and Class members and their PII. Equifax's misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of Data Breach.

70.     Equifax also had independent duties under state and federal laws that required Equifax to reasonably safeguard Plaintiffs' and Class members' PII and to promptly notify

them about the data breach.

71.     Equifax breached its duties to Plaintiffs and Class members in numerous ways, including:

   a.     by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs and Class members;

   b.     by creating a foreseeable risk of harm through the misconduct previously described;

   c.     by failing to implement adequate security systems, protocols and practices sufficient to protect Plaintiffs' and Class members' PII both before and after learning of the Data Breach;

   d.     by failing to comply with the minimum industry data security standards during the period of the Data Breach; and

   e.     by failing to timely and accurately disclose that Plaintiffs' and Class members' PII had been improperly acquired or accessed.

72.     Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiffs and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiffs and Class members during the time it was within Equifax's possession or control.

73.     The law further imposes an affirmative duty on Equifax to timely disclose the unauthorized access and theft of the PII to Plaintiffs and the Class so that Plaintiffs and Class members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

74.     Equifax breached its duty to notify Plaintiffs and Class members of the unauthorized access by waiting many months after learning of the breach to notify Plaintiffs and Class members and then by failing to provide Plaintiffs and Class members information

regarding the breach until September 2017. Instead, its executives disposed of at least $1.8 million worth of Equifax shares after Equifax learned of the Data Breach but before it was publicly announced. To date, Equifax has not provided sufficient information to Plaintiffs and Class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and the Class.

75.    Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiffs and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiffs and Class members during the time it was within Equifax's possession or control.

76.    Further, through its failure to provide timely and clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their financial data and bank accounts.

77.    Upon information and belief, Equifax improperly and inadequately safeguarded PII of Plaintiffs and Class members in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access. Equifax's failure to take proper security measures to protect sensitive PII of Plaintiffs and Class members as described in this Complaint created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of PII of Plaintiffs and Class members.

78.    Equifax's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to PII of Plaintiffs and Class members; and failing to provide Plaintiffs

and Class members with timely and sufficient notice that their sensitive PII had been compromised.

79.    Neither Plaintiffs nor the other Class members contributed to the Data Breach and subsequent misuse of their PII as described in this Complaint.

80.    As a direct and proximate cause of Equifax's conduct, Plaintiffs and the Class suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost money, time, and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports; and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse, and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**COUNT II**
NEGLIGENCE PER SE
(ON BEHALF OF PLAINTIFFS AND
THE NATIONWIDE CLASS)

81.     Plaintiffs restate all other allegations in this complaint as if fully set forth herein.

82.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

83.     Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and by not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and given the foreseeable consequences of a data breach at a corporation such as Equifax, including, specifically, the immense damages that would result to Plaintiffs and Class members.

84.     Equifax's violation of Section 5 of the FTC Act constitutes negligence per se.

85.     Plaintiffs and Class members are within the class of persons that the FTC Act was intended to protect.

86.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

87.     As a direct and proximate result of Equifax's negligence *per se*, Plaintiffs and

the Class have suffered, and may continue to suffer, injuries and damages arising from Plaintiffs' inability to use their debit or credit cards because those cards may have been or may be cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

## **COUNT III**
WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")
(ON BEHALF OF PLAINTIFFS AND
THE NATIONWIDE CLASS)

88.    Plaintiffs restate all other allegations in this complaint as if fully set forth herein.

89.    As individuals, Plaintiffs and Class member are consumers entitled to the protections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.

90.    Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

91.     Equifax is a consumer reporting agency under the FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

92.     As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

93.     Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The compromised data was  a  consumer  report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

94.     As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities,  or  computer

hackers such as those who accessed the Nationwide Class members' PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

95.    Equifax furnished the Nationwide Class members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

96.    The FTC has pursued enforcement actions against consumer reporting agencies under the FCRA for failing to "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by the" FCRA, in connection with data breaches.

97.    Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. The willful and reckless nature of Equifax's violations is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, and willingly failed to take them.

98.     Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the FTC. *See, e.g.*, 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R Part 600, Appendix To Part 600, Sec. 607 2E. Equifax obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiffs and Class members of their rights under the FCRA.

99.     Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Class members' personal information for no permissible purposes under the FCRA.

100.    Plaintiffs and Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiffs and each of the Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

101.    Plaintiffs and the Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

**<u>COUNT IV</u>**
NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT
(ON BEHALF OF PLAINTIFFS AND
THE NATIONWIDE CLASS)

102.    Plaintiffs restate all other allegations in this complaint as if fully set forth

herein.

103.    Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

104.    Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and Class members' PII and consumer reports for no permissible purposes under the FCRA.

105.    Plaintiffs and Class members have been damaged by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Class members are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

106.    Plaintiffs and the Nationwide Class member are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

## COUNT V
### DECLARATORY JUDGMENT
### (ON BEHALF OF PLAINTIFFS AND
### THE NATIONWIDE CLASS)

107.    Plaintiffs restate all other allegations in this complaint as if fully set forth herein.

108.    As previously alleged, Plaintiffs and Class members entered into an implied

contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiffs and Class members that require it to adequately secure PII.

109.    Equifax still possesses PII pertaining to Plaintiffs and Class members.

110.    As of this writing, Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and, most importantly, its systems.

111.    Accordingly, Equifax has not satisfied its implied contractual obligations and duties to Plaintiffs and Class members.  In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is even more vulnerable than before.

112.    Actual harm has arisen in the wake of the Data Breach regarding Equifax's implied contractual obligations and duties of care to provide data security measures to Plaintiffs and Class members.

113.    Plaintiffs seek a declaration that (a) Equifax's existing data security measures do not comply with its implied contractual obligations and duties of care, and (b) in order to comply with its implied contractual obligations and duties of care, Equifax must implement and maintain reasonable security measures, including, but not limited to:

  a.    engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

  b.    engaging third-party security auditors and internal personnel to run automated security monitoring;

  c.    auditing, testing, and training its security personnel regarding any new or modified procedures;

d.      segmenting PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e.      purging, deleting, and destroying in a reasonably secure manner such PII as is not necessary for Equifax's provisions of services;

f.      conducting regular database scanning and securing checks;

g.      routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.      educating consumers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax consumers must take to protect themselves.

## COUNT VI
VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA")
O.C.G.A. § 10-1-390, *ET SEQ.*
(ON BEHALF OF PLAINTIFFS AND
THE NATIONWIDE CLASS)

114.    Plaintiffs restate all other allegations in this complaint as if fully set forth herein.

115.    Equifax is engaged in, and its acts and omissions affect, trade and commerce pursuant to O.C.G.A. § 10-1-392(28).

116.    Equifax's acts, practices, and omissions at issue in this matter were directed and emanated from its headquarters in Georgia.

117.    Plaintiffs and Class members entrusted Equifax with their PII.

118.    As alleged herein this Complaint, Equifax engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the GFBPA:

a.   failure to maintain adequate computer systems and data security practices to safeguard PII;

b.   failure to disclose that its computer systems and data security practices were inadequate to safeguard PII from theft;

c.   failure to timely and accurately disclose the Data Breach to Plaintiffs and Class members;

d.   continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach; and

e.   continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the Data Breach and before any alleged remediation of the Data Breach may have occurred.

119.   Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the GFBPA.

120.   Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

121.   As a direct and proximate result of Equifax's violation of the GFBPA, Plaintiffs and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiffs and Class members; damages arising from Plaintiffs' inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost money, time, and effort to

mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

122.    Also as a direct result of Equifax's knowing violation of the GFBPA, Plaintiffs and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

    a.    Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

    b.    Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

    c.    Ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures;

    d.    Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

    e.    Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f.      Ordering that Equifax conduct regular database scanning and securing checks;

g.      Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.      Ordering Equifax to take meaningful steps to educate consumers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as about the steps consumers must take to protect themselves.

123.    Plaintiffs bring this action on behalf of themselves and Class members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiffs and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

124.    Plaintiffs and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the GFBPA, costs, and such other further relief as the Court deems just and proper.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class members proposed in this complaint, respectfully request that the Court enter judgment in their favor and against Equifax as follows:

a.      For an Order certifying the Class, as defined herein, and appointing Plaintiffs and their counsel to represent the Nationwide Class;

b.  For equitable relief enjoining Equifax from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiffs and Class members;

c.  For equitable relief compelling Equifax to use appropriate cyber security methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromised;

d.  For an award of damages, as allowed by law in an amount to be determined;

e.  For an award of attorneys' fees costs and litigation expenses, as allowable by law;

f.  For prejudgment interest on all amounts awarded; and

g.  For such other and further relief as this court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demands a jury trial on all issues so triable.


Dated:  September 26, 2017                **BRONSTEIN, GEWIRTZ**
                                          **& GROSSMAN, LLC**
                                          *Attorneys for plaintiffs Mark Gottlieb and*
                                          *Frank J. Brush*

                                          By:
                                          ____/s/ Neil Grossman_____
                                          Neil Grossman
                                          Peretz Bronstein (*to be admitted pro hac vice*)
                                          144 North Beverwyck Road Lake, Suite 187
                                          Hiawatha, New Jersey 07034
                                          Tel:  (973) 335-6409
                                          Fax:  (973) 335-3717
                                          neil@bgandg.com
                                          peretz@bgandg.com